**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

David V. T.,

No. 0:26-cv-04091-KMM-JFD

Petitioner,

v.

Todd Blanche, *Attorney General*; Markwayne Mullin, *Secretary, U.S. Department of Homeland Security*; David J. Venturella, *Acting Director of Immigration and Customs Enforcement*; David Easterwood, *Acting Director, St. Paul Field Office Immigration and Customs Enforcement*;

Respondents.

Petitioner David V. T. ("Petitioner" or "David") has been detained by federal immigration authorities since August 28, 2026. David brought this action to challenge his ongoing detention. Pet., Dkt. 1. He claims that his arrest was unlawful because he was arrested without a warrant and without a lawful basis for a warrantless arrest. *Id.* ¶¶ 51–53. In addition, he claims that he is being detained in violation of the Due Process Clause of the Fifth Amendment because Respondents have made no individualized inquiry that his detention is necessary to ensure his appearance in immigration court or to protect the community. *Id.* ¶¶ 43–50. David seeks a writ of habeas corpus requiring his immediate release from the custody of Respondents or, in the alternative, an order compelling Respondents to provide him with a prompt bond hearing to assess the need for his ongoing detention. *Id.* at 24. Respondents oppose the petition, arguing that under the relevant

provisions of the Immigration and Nationality Act ("INA"), David is subject to mandatory detention until the conclusion of removal proceedings, his arrest complied with governing law, and his due process claim is foreclosed by existing precedent. For the reasons that follow, the petition is granted on David's unlawful arrest claim and Respondents are ordered to immediately release him from immigration custody.

## BACKGROUND

David is a citizen of Mexico. In February 2021, he entered the United States without inspection by walking across the southern border into Texas. He has lived in the United States since then, residing in Pennsylvania. He has no criminal record.

On August 28, 2026, David was driving in York, Pennsylvania when he was pulled over by a Northern York Regional Police Department ("NYRPD") officer for a traffic violation. David presented his Mexican passport to the NYRPD officer. The officer contacted Immigration and Customs Enforcement ("ICE") Enforcement and Removal Operations ("ERO") to request a records check. ICE/ERO ran queries in relevant Department of Homeland Security (DHS) databases, but the queries showed no information. An ICE/ERO Deportation Officer ("DO") conducted a phone interview with David, during which David allegedly admitted to entering the United States illegally. ICE/ERO directed the NYRPD officer to detain David, and the officer transported him to the York ICE/ERO Office where ICE/ERO took custody of him and conducted further administrative processing. After taking him into custody, ICE agents transported David to Sherburne County Detention Center in Elk River, Minnesota, where he has remained detained since his arrest on August 28.

David alleges he was not shown a warrant by immigration officials or local police at any point. Deportation Officer Alexander W. Pantaleo ("DO Pantaleo") asserts that a Supervisory Detention and Deportation Officer ("SDDO") issued a Notice to Appear ("NTA") for David on August 28, 2026 and another DO personally served David with the NTA. Pantaleo Decl. ¶ 7, Dkt. 6; NTA, Dkt. 6-1. DO Pantaleo also asserts that an SDDO issued a Form I-200 administrative arrest warrant for David on August 28, 2026. Pantaleo Decl. ¶ 8; I-200, Dkt. 6-2.

## DISCUSSION

District courts may grant a petition for a writ of habeas corpus when the petitioner is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). The petitioner has the burden of proving his detention is illegal by a preponderance of the evidence. *Jose J.O.E. v. Bondi*, 797 F. Supp. 3d 957, 965 (D. Minn. 2025).

### I. Unlawful Arrest Claim

#### A. Legal Standards

Petitioner claims that he is entitled to an order requiring Respondents to immediately release him from custody because he was arrested unlawfully. There are "two mechanisms by which 'it is appropriate to arrest an alien during the removal process.'" *Cesar F.F. v. Blanche*, No. 26-cv-2540 (PJS/DTS), Dkt. 8 at 3 (D. Minn. June 2, 2026) [hereinafter *Cesar F.F.* Order] (quoting *Arizona v. United States*, 567 U.S. 387, 407 (2012)). First, "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C.

§ 1226(a). Second, the law allows for a warrantless arrest in limited circumstances. *See* 8 U.S.C. § 1357(a)(2).

Under the first mechanism, immigration authorities may arrest a noncitizen for the purposes of removal proceedings pursuant to an administrative warrant known as a Form I-200, Warrant of Arrest. 8 C.F.R. § 236.1(b)(1). Ordinarily, Form I-200 warrants are issued in connection proceedings initiated pursuant to 8 U.S.C. § 1226, which establishes a "discretionary detention framework" under which persons detained receive bond hearings prior to an order requiring detention. *See Jose J.O.E. v. Bondi*, 797 F. supp. 3d 957, 969 (D. Minn. 2025). The discretionary detention contemplated by this statute also allows the government to "release the alien on … bond of at least $1,500 … or … conditional parole." 8 U.S.C. § 1226(a)(2).

A Form I-200 warrant is valid when it is issued at the same time as ICE issues a notice to appear, or any time after the NTA has been issued. *Id.*; *Martha C.G.P. v. Blanche*, No. 26-cv-2308 (DWF/JFD), 2026 WL 1329577, at *3 (D. Minn. May 13, 2026) ("Respondents may arrest a noncitizen using a Form I-200 only if the Form I-200 issues a the same time or after the Department of Homeland Security issues an NTA."). Courts have held that an arrest is made "pursuant to" an I-200 warrant when the warrant is issued prior to that arrest. *Makitio G. A., v. Blanche*, No. 26-cv-2200 (ECT/DLM), 2026 WL 1584457, at *4 (D. Minn. May 22, 2026) ("[I]f a removal warrant for [the noncitizen] was not procured until ... after his ... arrest, that means he was arrested without a warrant."), *R&R adopted*, 2026 WL 1591270 (D. Minn. June 3, 2026); *cf. Pina C.D.B. v. Bondi*, No. 26-cv-1929 (KMM/DJF), 2026 WL 810676, at *2 (D. Minn. Mar. 24, 2026) (collecting cases

holding 8 U.S.C. § 1226(a)'s "[o]n a warrant" language to require the issuance of a warrant prior to arrest).

The second means of arresting a noncitizen is under the warrantless-arrest authority provided in 8 U.S.C. § 1357. In the provision relevant here, such an arrest is permissible only if there is "reason to believe that the alien so arrested is in the United States in violation of any [immigration] law or regulation and is likely to escape before a warrant can be obtained for his arrest[.]" 8 U.S.C. § 1357(a)(2). By its plain language, § 1357(a)(2) contains two separate requirements: (1) that the individual is in the United States in violation of immigration laws; and (2) that he is likely to escape before a warrant can be obtained for his arrest. And in this context, "the term 'reason to believe' . . . means constitutionally required probable cause." *United States v. Quintana*, 623 F.3d 1237, 1239 (8th Cir. 2010).

In addition to the discretionary detention framework established by § 1226(a), noncitizens may also be subject to a nondiscretionary, mandatory detention under 8 U.S.C. § 1225(b)(2)(A). Under § 1225, an alien who is "present in the United States who has not been admitted or who arrives in the United States" without inspection "shall be deemed … an applicant for admission," § 1225(a)(1), and if an "immigration officer determines" that an applicant for admission "is not clearly and beyond doubt entitled to be admitted, the alien shall be detained" pending the outcome of removal proceedings, § 1225(b)(2)(A). The Eighth Circuit has held that this mandatory-detention statute applies not just to noncitizens encountered at or near the border who have entered the United States unlawfully, but to those who have entered the country without inspection and resided here

for a significant time. *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026). This marked a sea change in the interpretation of the scope of § 1225(b)(2)(A)'s application, as noncitizens in the interior of the country who entered without inspection had previously been understood to be entitled to a bond hearing under § 1226(a). *See Barbosa da Cunha v. Freden*, 175 F.4th 61, 91–93 (2nd Cir. 2026) (discussing prior Executive Branch practice and observing that "for five Presidential administrations over nearly three decades, [the government] did consistently release detainees on bond whom the government now argues are covered by Section 1225(b)(2)(A)").

**B. Analysis**

David claims that he was not arrested pursuant to a valid administrative warrant issued prior to his arrest, and he argues that there was not probable cause in this case to satisfy the requirements for a warrantless arrest under 8 U.S.C. § 1357(a)(2). *See* Pet'r Reply at 7. The Court agrees. The evidence in the record supports a conclusion that David was taken into custody at Respondents' direction prior to the issuance of the NTA or the Form I-200 arrest warrant. Respondents assert that the Form I-200 was a valid arrest warrant issued and served in compliance with applicable regulations. Resp. to Pet. at 28–29, Dkt. 5. However, Respondents point to no evidence showing that the warrant was issued prior to ICE/ERO directing the NYRPD officer who stopped David's vehicle to take him into custody for civil immigration purposes. Nor do Respondents present any argument or authority that an arrest made before an administrative warrant is issued is nevertheless made *pursuant to* that warrant. Therefore, to the extent Respondents contend that David's arrest was lawful because it was based upon a valid warrant, the Court concludes that

Respondents did not arrest David pursuant to any warrant and cannot rely upon the post-arrest issuance of the Form I-200 warrant to justify the arrest in this case.

Respondents assert several arguments in opposition to this conclusion, but the Court does not find them persuasive. First, Respondents suggest that ICE/ERO did not need a warrant to arrest David because he is subject to mandatory detention under § 1225(b)(2)(A) as that provision has been interpreted by *Avila*. *See* Resp. at 29 (citing cases). However, this Court agrees with others that have held "*Avila* did not decide the source or limits of the Government's authority to make a warrantless interior arrest." *Richard E.N.B. v. Easterwood*, No. 26-cv-2972 (JWB/LIB), 2026 WL 3033824, at *5 (D. Minn. Oct. 9, 2026). "The Eighth Circuit has not squarely addressed this issue, and courts confronting related questions are divided. Some have denied release where another statutory basis for detention exists," and "[o]thers have ordered release after finding that the Government lacked statutory authority for the arrest." *Id.* This Court agrees with the "great weight of persuasive authority from this District [that] supports the legal conclusion that a warrantless arrest under 8 U.S.C. § 1225(b)(2) must comply with § 1357." *Elder C.C. v. Blanche*, No. 26-cv-03832 (ECT/ECW), 2026 WL 3025948, at *2 (D. Minn. Oct. 8, 2026) (citing cases).

Next, Respondents argue that the circumstances of Petitioner's arrest here support a conclusion that there was probable cause for a warrantless arrest under 8 U.S.C. § 1357(a)(2). They argue that there was probable cause to believe David was present in the country illegally and due to his admissions during a phone interview because records checks showed no information establishing his lawful presence. And they contend that

there was probable cause to believe that David would escape before a warrant could be obtained because he had no domestic identification, he was in a vehicle, and ICE/ERO was not on the scene of the traffic stop to obtain and serve a warrant. Resp. to Pet. at 29–33. The Court disagrees, Though the record likely establishes the existence of probable cause that David was not lawfully present in the United States, but even assuming that is so, there is insufficient support for a determination that there was probable cause to believe he was "likely to escape before a warrant [could] be obtained for his arrest." 8 U.S.C. § 1357(a)(2). This requirement "considers not just whether the noncitizen will be located at the scene of encounter with immigration enforcement but also whether immigration enforcement would be able to arrest the noncitizens at another clearly identifiable location." *Walther A.S. v. Blanche*, No. 26-cv-2804 (LMP/SGE), 2026 WL 1734906, at *3 (D. Minn. June 16, 2026) (citation modified). David's lack of domestic identification, the absence of information in DHS databases, and the fact that he was in a vehicle when he was stopped do not demonstrate that he was likely to escape before a warrant could be obtained, especially in light of the fact that he freely admitted he was not authorized to be in the United States, cooperated with the ICE/ERO officer during the phone interview, and there is no evidence that the NYRPD officer or the ICE/ERO agent asked him for his home address at any point during the vehicle stop. *See Elder C.C.*, 2026 WL 3025948, at *2 (declining to find probable cause that the petitioner was likely to escape before a warrant could be obtained); *Manual P.N. v. Easterwood*, No. 26-cv-3799 (ECT/DJF), 2026 WL 2823650, at *2 (D. Minn. Sept 21, 2026) (finding no support for a warrantless arrest under § 1357's likely-to-escape prong where the noncitizen was stopped in a vehicle, admitted he was not legally

in the Untied States, did not register an address with DHS, and lacked identification showing that address).

Finally, relying on the Seventh Circuit's decision in *Arias v. Rogers*, 676 F.2d 1139, 1143–44 (7th Cir. 1982), Respondents argue that even if Petitioner's arrest was unlawful, he is foreclosed from challenging his arrest in a habeas case given that he is now in removal proceedings before the immigration court. Resp. to Pet. at 24–28. This Court has previously rejected the government's argument that an unlawful arrest cannot result in relief from custody in a habeas proceeding. *Emily Andreina N.V. v. Blanhce*, No. 26-cv-2570 (KMM/EMB), 2026 WL 2209844, at *4–5 (D. Minn. July 31, 2026). And like other courts in this District, the Court "decline[s] to adopt *Arias* for the propositions that a habeas petitioner in removal proceedings cannot challenge an unlawful arrest or that release is not the appropriate remedy." *Elder C.C.*, 2026 WL 3025948, at *3; *Wilfredo C.M. v. Blanche*, No. CV 26-3966 (JRT/DJF), 2026 WL 2875061, at *2 (D. Minn. Sept. 24, 2026) (same).

Based on the discussion above, the Court concludes that Petitioner David V. T. was not arrested pursuant to a warrant and his warrantless arrest did not comply with the requirements of 8 U.S.C. § 1357(a)(2). As a result, the Court will grant the petition and order Respondents to release him from custody.[1]

[1] Given this conclusion, the Court need not address the question of whether David's detention without a bond hearing violates the Due Process Clause of the Fifth Amendment.

## ORDER

Accordingly, **IT IS HEREBY ORDERED THAT**:

1. Petitioner David V. T.'s Verified Petition for a Writ of Habeas (Dkt. 1) is **GRANTED**.

2. Respondents shall release Petitioner David V. T. from immigration custody immediately.

3. Respondents shall file a status report with the Court within 48 hours of Petitioner's release advising that it has occurred.

**Let Judgment be entered accordingly**.

Date: October 26, 2026

*s/Katherine Menendez*
Katherine Menendez
United States District Judge